IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RONALD JOLLY,
    Plaintiff,

v.

SUSAN COLE, *et al.*,
    Defendants.

Case No. 3:25-cv-03283-JEH

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Vienna Correctional Center, filed an Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Graham Correctional Center ("Graham"). (Doc. 9). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II

Plaintiff files suit against Graham's Medical Director Susan Cole, Nurse Practitioners Lindsey and Tim Adasanyn, Wexford Health Sources Inc. ("Wexford"), and the Illinois Department of Corrections ("IDOC").

Between January 12, 2024, and April 30, 2025, Plaintiff alleges he saw Defendants Cole, Lindsay, and Adasanyn several times about his chronic back disease and the excruciating pain in his right fingers and thumb.

Regarding his chronic back disease, Plaintiff alleges he informed Defendants Cole, Lindsay, and Adasanyn he was in pain and needed an MRI and injections. Plaintiff alleges he informed Defendants he had received injections for his chronic back disease prior to his incarceration at Graham. Plaintiff alleges Defendants failed to refer him to an outside medical provider for an MRI and injections. Plaintiff alleges Defendant Cole prescribed mild muscle relaxers, but the medication would often run out.

Plaintiff alleges he injured his hand while working in the dietary at Graham on June 6, 2024. Plaintiff states he was pulling a cart loaded with several hundred pounds of potatoes and vegetables out of the walk-in freezer when another individual pushed on the cart, causing Plaintiff's hand to be smashed between the safety lock on the freezer door.

Plaintiff was sent to the Health Care Unit ("HCU). Defendant Lindsay attempted to stitch Plaintiff's hand, but she allegedly "pulled several of the stitches" and had to redo them, causing Plaintiff additional pain. (Doc. 9 at p. 4). Plaintiff alleges Defendant Lindsey failed to administer a tetanus shot on June 6, 2024, because the HCU did not have one available. Plaintiff received a tetanus shot on June 11, 2024.

On an unspecified date, Plaintiff saw Defendant Adesanyn and asked him to remove the stitches. Defendant allegedly stated the stitches were horrible, but

2

he refused to remove them because he feared causing more damage. Plaintiff alleges the stitches remained in place for weeks until the injury scabbed over. Plaintiff removed the stitches when they began to come apart.

Plaintiff alleges Defendant Adesanyn failed to order an X-ray for his right thumb. On an unknown date, Defendant Cole examined Plaintiff's thumb and ordered an X-ray, which revealed Plaintiff's thumb was broken. Defendant Cole prescribed a sling/brace for Plaintiff's right hand after he filed a grievance against her on January 14, 2025. Plaintiff alleges he was also suffering from sharp pain in his right fingers and submitted several sick call requests, which were ignored.

Plaintiff alleges Defendant Wexford has a policy, custom, or practice to deny off-site medical treatment and tests, such as MRIs and X-rays, to save costs.

Plaintiff also alleges he requested a teeth cleaning. The HCU Administrator, who is not named as a Defendant, allegedly told Plaintiff to be patient because the dental hygienist had been off for a while.

### III

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendants Cole, Lindsay, and Adesanyn based on their alleged deliberate indifference to his chronic back disease, hand injury, and the pain in his right fingers and thumb.

With respect to Defendant Wexford, there is no vicarious liability under § 1983 solely based upon an employer or supervisory relationship. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 692 (1978); *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Rather, to proceed on a claim against an institution rather than an individual defendant, Plaintiff must allege "(1) that he…suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage" of that defendant, acting under color of state law. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789-90 (7th Cir. 2014). As indicated above, Plaintiff adequately alleged his Eighth Amendment rights were violated. Further, Plaintiff alleged this violation was, at least in part, a result of Wexford's policy, practice, or custom to deny off-site medical treatment and diagnostic tests to save costs. Therefore, Plaintiff may also proceed on a *Monell* claim against Defendant Wexford.

The Eleventh Amendment bars Plaintiff's claim for damages against the IDOC, as the IDOC is not a "person" amenable to suit under § 1983. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Veal v. Illinois Dep't of Corr.*, No. 18-

CV-0621-MJR, 2018 WL 3009265, at *2 (S.D. Ill. June 15, 2018). The IDOC is dismissed with prejudice.

Finally, it does not appear that Defendants Cole, Lindsay, and Adesanyn were involved in the alleged denial or delay of Plaintiff's dental treatment. Therefore, any claim related to Plaintiff's dental treatment is dismissed without prejudice.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on (1) an Eighth Amendment claim against Defendants Cole, Lindsay, and Adesanyn based on their alleged deliberate indifference to the treatment of his chronic back disease, hand injury on June 6, 2024, and the pain in his right fingers and thumb, and (2) a *Monell* claim against Defendant Wexford. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendant IDOC is DISMISSED WITH PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendant IDOC.

3) Plaintiff's Motion Seeking Status of Complaint [10] is MOOT.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within

30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed

with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: January 12, 2026

s/Jonathan E. Hawley
U.S. District Judge
